## Phinehas N. Crane, Executor, *versus* Kezia Crane.

A will contained the following clause : " As to my wife, my will is, that she shall have her dower out of my estate, in the same manner she would be entitled to, if this will had not been made." It was *held*, that as this clause limited the wife to her dower in the real estate and excluded her from her distributive share of the personal estate, it was a "*provision*" made for her within the meaning of *St.* 1833, c. 40, and therefore, that upon waiving such provision, she might claim to have an allowance made to her out of the personal estate, under that statute.

Appeal from a decree of the Court of Probate.

The will of Elijah Crane, the husband of the appellee, con tained the following clause : " As to my wife, Kezia Crane, my will is, that she shall have her dower out of my estate, in the same manner she would be entitled to, if this will had not been made." This was the only clause in the will relating to the wife.

At a Court of Probate held in November, 1834, the ap-pellee waived the provision made for her in the will. At a

Court of Probate held in December, 1834, upon the petition of the appellee, a decree was passed, setting forth that the state of the family under her care and the circumstances of the estate were such as to make it fit and reasonable, that the appellee should have more than her distributive share out of the personal estate of her husband, and ordering that there should be allowed to her out of such personal estate, the sum of $895, " besides her apparel, to be taken from the inventory in such articles, including household goods and furniture, as she shall select, at the appraisement."

Crane
v.
Crane

From this decree the appellant, who was the executor of the will and one of the devisees, appealed, and assigned the following reasons of appeal :

1. That there was no law authorizing the Court of Probate, under the circumstances of this case, to make any allowance to the widow out of the personal estate of the deceased.

2. That the allowance, if any were legal, was unreasonably large.

3. That, on the petition of the widow to the Probate Court, her dower was duly set off to her in April, 1834, and that she immediately entered into possession of the estate so assigned to her, and still remained in the possession thereof ; and that the testator made no provision for the widow in his will, except that above mentioned, which the Court of Probate regarded as no provision at all ; nevertheless the court passed the decree from which the appeal was made.

*Metcalf*, for the appellant, said that before the *St.* 1833, *c.* 40, no allowance was to be made to the widow, in case her husband died intestate ; that by that statute whenever the widow should waive the provision made for her in her husband's will, the judge of probate might make her such allowance as he was authorized to make to the widow of an intestate ; that by *St.* 1783, *c.* 24, § 8, the widow was authorized to waive the provision for her in the will, and claim her dower ; that the will in the present case gives the widow no personal estate, but is tantamount to a declaration that she shall have her legal rights only ; that consequently there was no provision made for her, and of course there could be no waiver, and

*Oct. 27th.*

she was not entitled to any allowance. *St.* 1805, *c.* 90, § 2 *Perkins* v. *Little*, 1 Greenl. 148 ; *Brackett* v. *Leighton*, 7 Greenl. 383 ; *Stearns* v. *Stearns*, 1 Pick. 161.

*Mann*, for the appellee.

PUTNAM J. afterward drew up the opinion of the Court. By the *St.* 1833, *c.* 40, it is provided, " that whenever any widow shall waive the provision made for her in the last wi'l and testament of her deceased husband, the judge of probate, having jurisdiction thereof, is hereby authorized and empowered to make to such widow such allowance from the personal estate of said deceased testator, as he is now by law authorized to make to widows of persons deceased intestate." The r pellee claims under this statute.

What allowance was the Court of Probate then authorized to make to the widow of a husband deceased *intestate ?*

By the *St.* 1783, *c.* 16, § 2, chattels and personal estate are to be distributed among the heirs in the same way and manner as real estates of intestates. By § 3, it is provided, that the chattels and personal estate shall stand chargeable with the payment of all the just debts and funeral charges of the deceased ; and after the payment thereof, the surplusage, if any there be, is to be decreed by the judge of probate, one third to the widow of the deceased for ever, unless the intestate died without issue, in which case he shall have one half thereof for ever. And when the personal estate shall be insuf- ficient to pay the debts and funeral charges of the deceased, the widow shall nevertheless be entitled to her apparel and such other of the personal estate as the judge of probate shall determine necessary according to her quality and degree. And such part of the personal estate so allowed to the widow, shall not be assets in the hands of the executor or administrator.

The allowance contemplated in this statute is to be made, where the estate is insolvent. By the 4th section, the widow is to have her dower in all cases. But if there should be personal estate enough to pay all the debts, the widow, by the letter of this act, would not be entitled to any allowance. And yet the claim for it would be as necessary and just in such a case, as it would be if the personal estate were insufficient

That difficulty was removed by the *St.* 1802, *c.* 93, which authorizes the judge of probate to make the allowance in cases where the personal estate is sufficient to pay the debts, in like manner as the widow is entitled in cases where the same is insufficient. Then came the *St.* 1805, *c.* 90, regulating the descent and distribution of intestate estates ; and the 2d section, touching the descent of personal estate not lawfully disposed of by last will, carves for the widow in the first place. It provides, that the personal estate, " after allowing to the widow (if any) her wearing apparel according to the degree and estate of her husband, and such further necessaries as the judge of probate shall order, regard being had to the state of the family under her care," shall be applied, first, to pay the debts, funeral charges and charges for settling the estate, and then be distributed among the same persons and in the same proportion as the real estate is to descend, providing, however, that if the intestate shall leave a widow and issue, she shall have one third of the residue, and that if there be no issue, she shall have one half of the residue of the personal estate. And by the first section there is a saving also, in all cases, of dower for the widow.

The allowances to be made to the widow under the statutes prior to 1816, seem to be confined to the estates of persons intestate, notwithstanding it might be argued to the contrary, from the clause above cited from the *St.* 1783, *c.* 16, viz. that the personal estate so allowed, should not be assets in the hands of the *executor* or administrator. But the subject was taken up again by the *St.* 1816, *c.* 95, and the allowance is expressly extended to estates of persons whether testate or intestate. The first section provides, that whether the deceased person died testate or intestate, the widow shall have her apparel and such other, and so much, of the personal estate as the judge of probate shall determine necessary according to her quality and degree ; and that such personal estate so allowed, shall not be assets in the hands of the executor or administrator. And where the allowance shall have been made from estates represented to be insolvent, which shall prove to be solvent, that in such cases the judge of probate may make further allowances to the widow, having regard to what shall have been

36 *

allowed to her. And the second section confirms all allow· ances theretofore made, excepting such as shall have been annulled in the Supreme Court of Probate.

This provision might seem to require the judge to make an allowance in addition to the will, and in cases where the widow was amply provided for by the will, which probably was not intended by the legislature, however favorably they seem to have provided for widows. They then passed the *St.* 1833, *c*. 40, before cited, requiring the widow to waive any provision made for her in the will, if she would claim the allowance from the judge of probate, of personal estate. And the allowance was to be made just as if the husband had died intestate. And that allowance, in addition to her apparel accord ing to the degree and estate of her husband, was to be of such further necessaries, as the judge of probate should order, regard being had to the state of the family under her care ; *St* 1805, *c*. 90 ; or, as explained by *St*. 1816, *c*. 95, "such other and so much of the personal estate as the judge of probate shall determine necessary according to her quality and degree." And this is the answer to the question proposed, viz. what allowance the judge of probate was entitled to make to the widow of a husband intestate.

But it is contended for the appellant, that the testator has not made any provision for his widow. 'His words are, " as to my wife, Kezia Crane, my will is, that she shall have her dower out of my estate, in the same manner she would have been entitled to, if this will had not been made." She is to have her dower only; she is not to have one third or one half of the personal property remaining after the payment of debts, to be distributed according to *St*. 1805, *c*. 90 ; but she is limited to her dower merely, by which we must understand her dower in the real estate. It may be, that the testator did not so intend ; but he has said so, whatever he intended. The provision is not such as the law would have made, if in fact he had made no will ; for it confines her to dower, and excludes her from her distributive share of the personal estate, one half or one third, as it might be, the amount to depend upon the fact whether the deceased left issue or not.

Now we cannot say that this is no provision for his widow

within the meaning of *St.* 1833, *c.* 40. The deceased certainly made a will, and in point of fact expressed his intention concerning his wife. Her *right* to waive, or to elect whether to claim under the will or not, does not depend upon the fact, whether it be of much, or little, or no benefit to her. The right to elect is secured to her, whether it be beneficial or otherwise, if she chooses to exercise it. If what the husband intended to be for her benefit, shall be so worded as to be inoperative, or if in fact the husband intended that she should have no benefit from the will, it is not to be inferred, that she might not resort to the provision of the law, which would be more advantageous. It would be imputing great absurd ty to the legislature to suppose, that she might waive the will when it contained something for her advantage, but that they would hold her to it, when it could be shown that the provision made respecting her was of no benefit at all.

It appears to us to be clear, that the legislature intended, that she should have her election to claim under the will, o. to claim her allowance under the statute.

That allowance is to be made before the distribution of the personal estate to the heirs, or according to the provisions of the will. The question before us does not relate to the residue of the personal estate after the allowance to the widow and the payment of debts. The testator has full power to dispose of such residue. But he cannot deprive his widow of her dower, or of such part of the personal estate as the judge of probate shall determine necessary according to her quality and degree.

And we all are of opinion, that in the case before us, the widow had a right to claim the provision so made for her by the law, upon waiving her claim under the will.

But it is contended, that the judge has allowed her too much.

The amount is to be regulated by the sound discretion of the judge. The construction of the statutes upon this subject has been certainly very liberal. And the words employed by the statute of 1816, are somewhat broader than those used in the statutes which were passed before that time. The statute of 1805 requires an allowance of apparel to the widow according

to the degree and estate of her husband, and stch further necessaries as the judge of probate should order, regard being had to the state of the family under her care ; while the statute of 1816 requires the judge to allow her such other and so much of the personal estate as he shall determine necessary, according to her quality and degree. The code which wil. come into operation has greatly and very properly limited this discretionary power, heretofore exercised by the courts of probate and confirmed, as we have seen, by the legislature.*

But we must determine the case at bar according to the rules under the existing laws, which seem to have met the approbation of the legisl.ture.

We are required to regard the quality and degree of the widow, which is certainly to be considered as elevated. Her husband was the sheriff of the county at the time of his death, and he was for many years a major-general of the militia of the Commonwealth, an office of much distinction and trust, which he held for many years and until his voluntary resignation.

The opinion of the Court is, that the decree of the judge of probate allowing the widow $895 from the personal estate of the deceased, besides her apparel, be confirmed ; and the cause is to be remitted to the Probate Court, to the end that the estate may be settled accordingly. .

---

* See Revised St. c. 64, § 1, and c. 65, § 4.